IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PHILLIP SPENCER, : |  |
|     Plaintiff, : |  |
| : |  |
| vs. : | CIVIL ACTION 19-00130-KD-N |
| : |  |
| DERRICK HOUSE, *et al.*, : |  |
|     Defendants. : |  |
| : |  |

**REPORT AND RECOMMENDATION**

Plaintiff Phillip Spencer, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). After careful review, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED**. It is further recommended that Plaintiff Phillip Spencer's action be **DISMISSED** with prejudice.

**I.     Factual Background.**

Plaintiff Spencer alleges in his complaint that on March 26, 2017, at approximately 8:30 p.m., he was stabbed by another inmate while sleeping in A-Dormitory, at Holman Correctional Facility ("Holman" or "the prison"). (Doc. 1 at 4). According to Spencer, the inmate who stabbed him, Inmate Kinard Ross, was not assigned to A-Dormitory and should not have been allowed to walk around the prison or enter A-Dormitory. Plaintiff claims that Inmate Ross stabbed him nine (9) times before Plaintiff pulled a knife out on Inmate Ross, and the two stood "face to face knives out." (Doc. 1 at 4). Plaintiff further claims, the officers who responded to the incident stood and watched the inmates while

they stood "face to face knifes out", for approximately 10 minutes before Plaintiff went to his bed; thereafter Plaintiff was approached by an officer to go to the hospital and Inmate Ross was allowed to go back to his dormitory. (Doc. 1 at 4). Plaintiff alleges that Defendants, Lieutenant Deveron Brown, Officer Darious House, and Sergeant Kelvin Lang, are liable for the lack of security in A-Dormitory which caused his attack.[1] Plaintiff is suing each defendant in his individual capacity for $150,000.00 and requests a jury trial. (Doc. 1 at 7; Doc. 5).

Defendants have answered the suit and submitted a Special Report denying all claims against them.[2] (Docs. 31-32). As part of their Special Report, Defendants have submitted the ADOC Incident and Duty Officer Reports, which detail the actions taken by the correctional officials at the time of the incident subject of this complaint. Defendants also submitted the Shift Duty Post Log, Post Assignment Roster, medical records, and personal affidavits in support of their position.

Defendants contend that on the evening of March 26, 2017, Lieutenant Brown was assigned as the Shift Commander at Holman, Officer House was assigned as the Rover for A and D dormitories, and Sergeant Lang was assigned as the Assistant Shift Commander in the Segregation Unit. (Doc. 32-5 at 1). Defendant House asserts that on March 26, 2017, he assisted with the nightly pill call dorm by dorm. (Docs. 32-2; 32-5 at

---

[1]   Plaintiff amended his original complaint to reflect that Officer House and Sergeant Lane be named as defendants in this action, instead of the originally identified defendants, D. Derrick and Sergeant Fountain. (Doc. 1 at 5; Docs. 19-20).
[2]   Defendants argue that they are immune from suit pursuant to sovereign and qualified immunity and that Plaintiff has failed to show a genuine issue of material fact. (Doc. 32 at 4, 7). Namely, Defendants assert that the attack was not the result of an excessive risk of inmate on inmate violence; nor was the attack the result of inadequate segregation or a known threat of harm. (Id. at 9).

3; 32-6). At approximately 8:48 p.m., while he was conducting pill call in B-Dormitory, Defendant House heard a disturbance in A-Dormitory, to which he, Officer Lang, and Officer Siler (a nondefendant) responded to and observed Plaintiff standing beside his assigned bed bleeding from multiple stab wounds. Officer House ordered Plaintiff to the health care unit for medical treatment (and Plaintiff was subsequently transported to the local hospital for further medical treatment).₃ When questioned as to who assaulted him, Defendants contend that Plaintiff responded he was asleep when attacked and did not know who assaulted him or why he was assaulted.

The Court has converted the Defendants' Answer and Special Report into a motion for summary judgment (doc. 35), to which Plaintiff has responded. (Doc. 42).

Plaintiff's response in opposition to the motion for summary judgment is disorganized (and incoherent in sections) but appears to suggest that Plaintiff was involved in a previous incident of violence with Inmate Kinard Ross, of which Defendant House was aware. In his response, Plaintiff states that approximately 33 days prior to the incident subject of this complaint, he was beaten by Inmate Kinard Ross (and another inmate) as he exited the shower. (Doc. 42 at 2-3). Plaintiff asserts about 15 other inmates joined Inmate Ross and surrounded him with knives in C-Dormitory. (Id.). Plaintiff claims the fight was first observed by the officer cadet, then Defendant House (as the fight ended).₄ According to Plaintiff, the inmates kicked him out of the dormitory, and when Defendant House questioned Plaintiff about what was going on and what the problem

---

3    The body chart reveals Plaintiff suffered multiple lacerations and punctures to Plaintiff's chest, shoulder, arm, hand, neck, and head. (Doc. 32-7). Plaintiff received sutures to the lacerations to his hand, chest, and shoulder. (Doc. 32-8).
4    Plaintiff states, "[t]hen the Defendant Darious House came as we fight stop fight." (Doc. 42 at 2).

was, Plaintiff said, "you see" and walked off and moved his belongings to A-Dormitory. (Id.). Plaintiff claims he returned to C-Dormitory (apparently on the same day, after he moved to A-Dormitory) and asked Defendant House if he and Inmate Ross could fight "one on one", and Defendant House agreed, with the condition that knives were not used. The two inmates prepared to fight, but when other inmates came to watch the fight, yielding knives, Defendant House would not allow the fight and sent the inmates back to their respective dormitories - Plaintiff back to A-Dormitory and Inmate Ross to C-Dormitory.

To the best of the Court's understanding, Plaintiff alleges Defendants are liable for the March 26, 2017 attack, which occurred approximately one month later, because Defendant Brown let Inmate Ross move around the prison dormitories,[5] Defendant Lang allowed Inmate Ross to enter the dormitory and walk away from the assault,[6] and Defendant House failed to prevent the March 26, 2017 attack, while having knowledge of the previous incident.[7] (Doc 42 at 5-6).

After a thorough review of the record, including Plaintiff's response to the motion, the Court determines this motion is ripe for consideration.

II. **Summary Judgment Standard**.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

---

[5] Plaintiff states, "Deveron Brown let them anything move and happen". (Doc. 42 at 5)
[6] Specifically, Plaintiff alleges, "Kelvin Lang the Sergeant right there in the A Dorm and Kinard Ross walk away did not make a officer stop him." (Id.).
[7] Plaintiff specifies, "Defendants Darious House an if he had did [h]is job the first time it will have never happen." (Id at 6).

4

Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis omitted)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. See Anderson, 477 U.S. at 255.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F. Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013) (citations omitted).

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." Garczynski, 573 F.3d at 1165 (internal citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id.* In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations." (citations omitted) (unpublished)).

## III. Discussion.

"In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." Martinez v. Burns, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005)). The parties do not dispute that Defendants were acting under color of state law, and Plaintiff seeks redress pursuant to the Eighth Amendment.

"The Eighth Amendment, applicable to the states through the Fourteenth Amendment, governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison." Id. (citing Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003); Bass v. Perrin, 170 F.3d 1312, 1316 (11th Cir. 1999)). The Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "'[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (some internal quotation marks omitted). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" Rhodes v. Chapman, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981).

For prisoners, "[t]he Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifference to a prisoner's serious medical needs." Thomas v. Bryant, 614 F.3d 1288, 1303 (11th Cir. 2010) (citations omitted). Additionally, "[b]eyond just restraining prison officials from inflicting 'cruel and unusual punishments' upon inmates, '[t]he Amendment also imposes duties on these officials, who must ... "take reasonable measures to guarantee the safety of the inmates."'" Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1319-20 (11th Cir. 2016) (quoting Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)).

The Court interprets Plaintiff's complaint liberally to allege both a lack of security and a failure to protect claim. Evans v. Ga. Reg'l Hosp., 850 F.3d 1248, 1253 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 557, 199 L. Ed. 2d 446 (2017) (*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys and are thus liberally construed.).

### A.   Official Capacity Claims.

Plaintiff appears to be suing Defendants in their individual capacities. (Doc. 1 at 7). To the extent, however, that he is suing Defendants in their official capacities, they are immune from suit. All Defendants named in this action are correctional officers employed by the Alabama Department of Corrections. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (citation omitted); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1309 (11th Cir. 2009) ("A claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employs the individual."); Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999) (per curiam) ("We start with the proposition that a suit against a governmental official in his official capacity is deemed a suit against the entity that he represents."). As a practical matter, then, Plaintiff's § 1983 claims against Defendants in their official capacities functionally reduce to § 1983 claims against the State of Alabama itself.

The Eleventh Amendment protects Defendants in their official capacities from Plaintiff's claims. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (stating that with some exceptions, "a suit in

which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought.") (citations omitted); Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) ("[S]tate officials sued in their official capacity are . . . protected by the [Eleventh A]mendment."). In addition, "a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable    " Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1524 (11th Cir. 1995). Thus, Plaintiff may not sue Defendants in their official capacities.

### B. Individual Capacity Claims.

Defendants, however, are not absolutely immune from suit in their individual capacities.

> Qualified immunity protects government officials from liability for civil damages unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place. See Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009); Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1184 (11th Cir. 2009). "The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" Lee[ v. Ferraro], 284 F.3d [1188,] 1194 [(11th Cir. 2002) ](citation omitted) (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001)). Qualified immunity is a defense not only from liability, but also from suit, so courts should ascertain the validity of a qualified immunity defense as early in the lawsuit as possible. See id.
>
> "Under the well-defined qualified immunity framework, a 'public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012) (quoting Lee, 284 F.3d at 1194). Once the official has done so, the burden shifts to the plaintiff to satisfy the following two-pronged inquiry: (1) whether the facts that a plaintiff has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. Pearson, 555 U.S. at 232, 129 S. Ct. 808. . . . The Supreme Court recently has made it clear that [courts] need not employ a rigid two-step procedure, but rather may exercise [their] discretion to decide "which of the two prongs of the

9

> qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236, 129 S. Ct. 808.

Gilmore v. Hodges, 738 F.3d 266, 272-73 (11th Cir. 2013). In determining whether the right at issue was clearly established at the time of the incident, courts must "turn to the precedent of the United States Supreme Court, the precedent of [the Eleventh Circuit Court of Appeals], and to the highest court of the relevant state in interpreting and applying the law in similar circumstances." Poulakis v. Rogers, 341 F. App'x 523, 527 (11th Cir. 2009).

The record evidence amply supports the determination that Defendants were acting within the scope of their discretionary authority as prison officials at the time of the alleged conduct at issue, and Plaintiff offers no evidence or argument to the contrary. Accordingly, the burden now shifts to Plaintiff to show why the Defendants are not entitled to qualified immunity. As set forth in detail below, Plaintiff does not meet his burden to demonstrate a constitutional violation by Defendants; therefore, Defendants are entitled to qualified immunity. See Hartley v. Parnell, 193 F.3d 1263, 1270-72 (11th Cir. 1999); Mallory v. Hetzel, 2016 U.S. Dist. LEXIS 115766, at *17, 2016 WL 5030469, at *6 (M.D. Ala. Aug. 26, 2016) ("[I]f a plaintiff fails to demonstrate a constitutional violation — that is, if plaintiff does not present evidence which, when viewed in the light most favorable to that plaintiff, supports an Eighth Amendment . . . claim — the officer is entitled to qualified immunity."), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 126915, 2016 WL 5109153 (M.D. Ala. Sept. 19, 2016).

    **C.**    **Failure to Protect Claim.**

A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," "a standard that incorporates due regard for prison officials' 'unenviable task of

keeping dangerous men in safe custody under humane conditions.'" Farmer, 511 U.S. at 844-45 (citations omitted). However, "a prison custodian is not the guarantor of a prisoner's safety", Purcell ex rel. Morgan v. Toombs Cnty., 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted), and "[i]t is not[] every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834.   Prison officials must "take  reasonable measures to guarantee the safety of the inmates", Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984), but there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not ......" Farmer, 511 U.S. at 838. It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. See, e.g., Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).   The Eighth Amendment is only  violated by "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate." Farmer, 511 U.S, at 828 (internal quotation and citation omitted).

> In this context, deliberate indifference requires: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that amounts to more than mere negligence. [Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010)]; see also Ray v. Foltz, 370 F.3d 1079, 1083 (11th Cir. 2004) ("Deliberate indifference is not the same thing as negligence or carelessness."). Thus, a prison official may have subjective knowledge only if he had both knowledge of specific facts from which an inference of risk of serious harm could be drawn, and he actually drew that inference. Carter[ v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003)]. And, therefore, a plaintiff's claim will fail as a matter of law in the absence of actual knowledge of the substantial risk, because to hold otherwise would impermissibly vitiate the subjective component of the analysis. See Farmer, 511 U.S. at 837-38.

Estate of Owens v. GEO Grp., Inc., 660 F. App'x 763, 767 (11th Cir. 2016).

Taking Plaintiff's allegations as true, there is simply no probative evidence sufficient to show deliberate indifference of "an objectively substantial serious risk of harm" posed by Inmate Ross (or any inmate) to Plaintiff prior to the attack on March 26, 2017. Cf., McGill v. Duckworth, 944 F.2d 344, 349 (7th Cir. 1991), *overruled in part on other grounds by* Farmer, 511 U.S. at 828 (A plaintiff "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety."). Specifically, Plaintiff presents no evidence that even he was aware or fearful of a possible attack at the time it occurred. Additionally, Plaintiff has failed to show Defendants "had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence." Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1583 (11th Cir. 1995). In fact, the record is void of facts proving or indicating any subjective knowledge or recklessness on the part of Defendants. And, it is incumbent on Plaintiff to make such an evidentiary showing that a defendant drew the inference and "knowingly or recklessly 'disregard[ed the] risk [of harm] by failing to take reasonable measures to abate it,'" Hale, 50 F.3d at 1583 (quoting Farmer, 511 U.S. at 848, 114 S. Ct. at 1984), as "[m]erely negligent failure to protect an inmate from attack does not justify liability under § 1983. . . . The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir.) (citations and internal quotations omitted), 496 U.S. 928, 110 S. Ct. 2624, 110 L. Ed. 2d 645 (1990).

The record is void of allegations or facts suggesting that Plaintiff communicated a threat of harm to Defendants prior to the March 26, 2017 attack. While Plaintiff describes being attacked by Inmate Ross approximately a month before the March 26, 2017 incident

subject of this complaint, there is simply no indication that Defendants Brown or Lang were notified of the incident, and Plaintiff does not assert that he was injured or exhibited observable signs of an assault as to alert Defendants that he had been attacked by Inmate Ross or any inmate prior to March 26, 2017. Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008) ("Each individual Defendant must be judge separately and on the basis of what that person [knew at the time of the incident.]").  Consequently, Plaintiff has failed to establish that Defendants Brown and Lang had subjective knowledge of a substantial risk of harm and cannot be liable for failing to protect Plaintiff from the March 26, 2017 attack.

As to Plaintiff's claim that Defendant House failed to protect him from Inmate Ross' attack on March 26, 2017, Plaintiff alleges that Defendant House observed at least a portion of a previous incident with Inmate Ross.  According to Plaintiff, approximately one month before the March 26, 2017 incident, Inmate Ross beat him as he exited the shower. The inmates fought until they reached Plaintiff's bed, where about 15 other inmates surrounded them (and had knives). At which time, Plaintiff contends that Defendant House "came as we fight stop fight the inmates kick Phillip Spencer out the dorm an all my stuff an bed Officer Darious House ask whats up I said you see and walk off and move all my stuff into A Dorm" (Doc. 42 at 2). There is no evidence or indication that this confrontation resulted in an Incident Report, disciplinary charges, or needed medical treatment.

Taking Plaintiff's facts as true, Defendant House was unaware of the reason for the incident and was never informed of a continued threat or fear for Plaintiff's safety.[8] Instead, Plaintiff maintains that he and Inmate Ross resided in separate dormitories following that incident. Plaintiff also fails to state having any fear of Inmate Ross following that incident or in the 33 days leading up to the March 26, 2017 attack. Plaintiff further fails to allege that he informed any officer of a specific threat of serious harm prior to March 26, 2017, nor did Plaintiff ever seek protective custody or ask to have Inmate Ross declared as an enemy. Cf., Marbury v. Warden, 936 F.3d 1227, 1236-37 (11th Cir. 2019) (To establish deliberate indifference to a substantial risk of serious harm, a plaintiff must show that he "gave prison officials further information enabling them to conclude that the risk was substantial and not merely possible."). Accordingly, it cannot be said that Defendant House knew of a substantial risk of serious harm to Plaintiff or failed to respond to the previous incident in a reasonable way. Cottone, 326 F.3d at 1358 (A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."); see also Farmer, 511 U.S. at 844-45 ("[P]rison officials who actually knew of a substantial risk

---

[8] Plaintiff asserts in his response to this motion that (after Plaintiff moved dormitories) he and Inmate Ross asked for and were granted permission by Defendant House to fight each other "one-on-one" as long as no weapons were used. (Doc. 42 at 2). When it appeared that bystanders to the fight had brought knives, Defendant House would not allow the two inmates to fight, and the inmates returned to their respective dormitories. Despite potential issues regarding these facts, the Court notes that Plaintiff asserts no claims related to this incident and appears to rely on these facts solely for the purpose of establishing that Defendants had prior knowledge of a substantial risk of harm and failed to take reasonable measures to guarantee Plaintiff's safety on March 26, 2017. The Court, thus, will apply Plaintiff's facts, as the author of his complaint, according to his design. Lampkin-Asam v. Volusia Cnty. Sch. Bd., 261 F. App'x 274, 277 (11th Cir. Jan. 9, 2008) (holding that leniency in construing pro se pleadings "does not permit the district court to act as counsel for a party or to rewrite deficient pleadings")

to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). The Eleventh Circuit has specifically stated that it is not enough for a plaintiff to state, "'Well, they should have known,'" to show that a defendant had subjective awareness of a substantial risk of harm to him. Goodman v. Kimbrough, 718 F.3d 1325, 1334 (11th Cir. 2013) (finding that if the court accepted such theory of liability, the deliberate indifference standard would be "silently metamorphosed into a font of tort law — a brand of negligence redux — which the Supreme Court has made abundantly clear it is not").  Thus, Plaintiff's failure to protect claim is not actionable under § 1983, and it is recommended that summary judgment be granted in favor of Defendants on this claim.

### D. Failure to Provide Adequate Security.

Plaintiff further asserts Defendants are liable for his assault based on a general lack of security. He specifically claims that Defendant House was not at his assigned post in A-Dormitory, Defendant Lang (as the assigned cubical officer) allowed Inmate Ross in and out of A-Dormitory, and Defendant Brown was responsible for the officers on duty on March 26, 2017. (Doc. 1 at 5-6).

To survive summary judgment on his claim of inadequate security, as previously discussed, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995).  Moreover, Plaintiff must show that each Defendant was "personally involved in acts or omissions that resulted in the constitutional deprivation." Id.  Again, the substantial risk of serious harm, must be objectively serious, that is "[t]he challenged condition must be 'extreme.'" Chandler v.

15

Crosby, 379 F.3d 1278, 1279 (11th Cir. 2004) (citation omitted). This objective risk may be established by alleging facts which show the existence of "an excessive risk of inmate-on-inmate violence" at a prison, an atmosphere where "violence and terror reign" or that there is a "constant threat of violence" and assault by other inmates. Purcell, 400 F.3d at 1320. However, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment[.]" Id.

Plaintiff has failed to present any evidence that the alleged lack of security inside the dormitory presented a severe or extreme condition that posed an unreasonable risk of serious harm to his safety. Indeed, the only evidence of inmate-on-inmate violence presented by Plaintiff are his sworn allegations regarding his own stabbing on March 26, 2017 and the previous altercation with Inmate Ross 33 days earlier. This is insufficient to demonstrate an excessive risk of inmate-on-inmate violence. See id. at 1322-23 (finding evidence that inmate fighting occurred at jail, with a few serious fights occurring, to be "less severe than what would be sufficient to rise to the level of demonstrating objectively a substantial risk of serious harm to inmates"). Consequently, to establish his claim, Plaintiff must show that Defendants acted with subjective knowledge of a substantial risk of harm to Plaintiff – that is, Defendant House left his post knowing Plaintiff was at a substantial risk of being assaulted and the Defendant Lang allowed Inmate Ross to enter the dormitory knowing that Inmate Ross was a threat to Plaintiff.

As previously discussed, there is no probative evidence that Plaintiff faced an objectively substantial serious risk of harm prior to the attack. While Plaintiff argues for the first time in his response to this motion that he had a previous altercation with Inmate Ross, implying that this put the defendants on notice that an attack was possible, there is

16

no evidence that any defendant actually knew of any substantially serious risk of harm. Carter v. Galloway, 352 F.3d 1346, 1350 (11th Cir. 2003) ("[T]here must be much more than mere awareness of [a] generally problematic nature [of another inmate because a] generalized awareness of risk . . . does not satisfy the subjective awareness requirement."); see also Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996) ("[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm."). The record is void of evidence or indication that Plaintiff ever identified Inmate Ross as an enemy or communicated a threat made by Inmate Ross or a fear of Inmate Ross prior to the March 26, 2017 attack. At most, it may only be said that any lack of security on March 26, 2017 was due to negligence, and "negligent failure to protect an inmate from attack does not justify liability under § 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

The record reflects that when Plaintiff was stabbed, multiple officers promptly responded to the incident and no fighting occurred once the officers arrived. It is undisputed that neither Defendants nor Plaintiff knew the identity of the attacker at the time of the incident. It is further undisputed that Defendants obtained prompt medical treatment for Plaintiff. Plaintiff's subjective beliefs and conclusory allegations regarding the adequacy of security in the housing unit, absent any additional supporting facts beyond those contained in his complaint, and in light of the evidence presented by Defendants, do not create a genuine issue of material fact as to the seriousness of the risk to inmates. See Broadnax v. Wynne, 2015 U.S. Dist. LEXIS 19542, 2015 WL 729525, at *18 (M.D. Ala. Feb. 19, 2015). Accordingly, Plaintiff has not satisfied the objective element of his Eighth Amendment claim because he has failed to establish that the

alleged lack of security in A-Dorm presented "a substantial risk of serious harm." See Farmer, 511 U.S. at 834. Nor has he shown that Defendants Brown, Lang, and House were aware of such a risk and chose to disregard it. Consequently, Plaintiff has failed to present evidence supporting an Eighth Amendment violation for general "lack of security" inside the housing unit.

In light of the forgoing, Defendants are entitled to qualified immunity on Plaintiff's claim that they acted with deliberate indifference to his safety. It is recommended that Defendants be granted summary judgment on the claims asserted against them.

### E.     Supervisory Claims.

Plaintiff claims that Defendant Brown is responsible, as a supervisory official, for the lack of security in A-Dormitory and, therefore, the inmate attack on March 26, 2017. (Doc. 1 at 5). Such a claim is rooted in the theory of *respondeat superior* and is not cognizable in a § 1983 action. Edwards v. Ala. Dep't of Corrs., 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support [a] § 1983 claim. . . ."); see also Duff v. Steub, 378 F. App'x 868 (11th Cir. 2010) ("Deliberate indifference can be based on the defendant's personal participation in the allegedly unconstitutional conduct or on the defendant's actions as a supervisor.").

> "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); Gonzalez, 325 F.3d at 1234, 2003 WL 1481583, at *4 (concluding supervisory officials are not liable on the basis of *respondeat superior* or vicarious liability). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. Gonzalez, 325 F.3d at 1235, 2003 WL 1481583, at *5; Brown v. Crawford, 906 F.2d

> 667, 671 (11th Cir. 1990). The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez*, 325 F.3d at 1234, 2003 WL 1481583, at *5 (quoting Braddy v. Florida Dep't of Labor & Empl. Sec., 133 F.3d 797, 802 (11th Cir.1998)); *Brown*, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's "'custom or policy ... result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Gonzalez, 325 F.3d at 1235, 2003 WL 1481583, at *5 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)); Hartley, 193 F.3d at 1263; see also Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1560-61 (11th Cir. 1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at 1234, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). In instances where supervisory liability is based on a supervisor's custom or policy, a plaintiff must show that the custom or policy was "the 'moving force [behind] the constitutional violation.'" Pinkney v. Davis, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citations omitted). "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." Id. (citations omitted).

Plaintiff has not pointed to any facts connecting Defendant Brown to an unconstitutional policy or custom of understaffing or failing to protect inmates. Given that Plaintiff fails to personally link actions of Defendant Brown to a claim, the undersigned finds that Plaintiff has failed to establish a valid Eighth Amendment claim against Defendant Brown and summary judgment should be granted in favor of Defendant Brown.

**IV. Conclusion.**

19

Based upon the foregoing reasons, it is recommended that Defendants' Motion for Summary Judgment be GRANTED, and Plaintiff Spencer's action be DISMISSED with prejudice.

## **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 7th__day of May 2020.

/s/Katherine P. Nelson
**UNITED STATES MAGISTRATE JUDGE**